UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIA WEICK, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | CASE NO. C08-5028RBL-KLS <br><br> REPORT AND RECOMMENDATION <br><br> Noted for December 12, 2008 |

Plaintiff, Julia Weick, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 48 years old.[1] Tr. 50. She has a general equivalency diploma and some further

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

vocational training, and has past work experience as a long haul truck driver. Tr. 18, 23, 136.

On May 24, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of May 4, 2006, due to a brain tumor, a stroke, hypertension and a visual impairment. Tr. 12, 99-101, 120. Her application was denied initially and on reconsideration. Tr. 50-52, 57. A hearing was held before an administrative law judge ("ALJ") on June 20, 2007, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's husband and a vocational expert. Tr. 20-49.

On June 28, 2007, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of late effects of cerebrovascular disease and a visual disturbance of the right eye;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform light work, with certain other non-exertional limitations;

(5) at step four, plaintiff could not return to her past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 12-19. Plaintiff's request for review was denied by the Appeals Council on December 8, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 2; 20 C.F.R. § 404.981.

On January 15, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on May 12, 2008. (Dkt. #12). Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a) the ALJ failed to consider the combined effects of plaintiff's vision impairment;

(b) the ALJ failed to properly evaluate and develop the medical evidence in the record;

(c) the ALJ erred in assessing plaintiff's credibility;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(d) the ALJ erred in assessing plaintiff's residual functional capacity; and

(e) the ALJ erred in not including all of plaintiff's limitations in the hypothetical question he posed to the vocational expert.

For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Properly Evaluated Plaintiff's Vision Impairment

In assessing plaintiff's residual functional capacity, the ALJ found in relevant part that plaintiff had "limitations in depth perception and field of vision." Tr. 16. At the hearing, in inquiring of the vocational expert as to whether there were other jobs plaintiff could perform, the ALJ stated that plaintiff's right eye had "diminished vision," but that the left eye was "good". Tr. 42. The vocational expert testified that there were two other jobs plaintiff could perform, the job of information clerk and that of office helper. Tr. 42-43, 45-46. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 18-19.

Plaintiff's argues that in so finding, the ALJ failed to fully understand the nature and extent of her vision impairments. Specifically, plaintiff asserts that while the record initially revealed vision loss in her right eye, it later indicated that she had bilateral vision loss and that her vision loss became progressively limited in both eyes. Plaintiff further asserts that in stating she had diminished vision only in her right eye at the hearing, the ALJ failed to consider the full extent of her vision loss, and the vocational expert was

not provided a completely accurate description of her visual limitations. Lastly, plaintiff argues the ALJ, in light of this evidence, should have contacted her treating physician to determine what effect her vision loss had on her ability to function on a daily basis. The undersigned disagrees.

While there appears to be some evidence of a diagnosed visual impairment in plaintiff's left eye in addition to that in her right eye, there is no indication any such impairment caused her further work-related limitations than found by the ALJ. See Tr. 178, 319. In addition, none of the remaining medical evidence in the record concerning plaintiff's vision problems, makes any specific reference to visual impairments or limitations affecting her left eye. See Tr. 183, 224-25, 252, 265-66, 275, 279, 302, 306, 384, 396, 398, 414-15. Indeed, the majority of the medical records that mention plaintiff's vision problems discuss only those concerning her right eye. See 183, 224, 252, 265-66, 275, 279, 306, 415.

In late June 2006, for example, plaintiff reported that she had "had two or three similar episodes of right visual field cut lasting two or three hours over the past 10 to 12 years," but that she had "never sought treatment or evaluation" for them, as they had "almost always resolved." Tr. 265. It also was noted at the time that plaintiff's field cut was "resolved to some degree." Id. Although neurological testing revealed "incomplete right homonymous hemianopsia in visual field testing," her visual acuity also was found to be "20/20 bilaterally." Tr. 266. In late August 2006, plaintiff was found to have limited field vision (Tr. 275), but this appears to be based solely on her right eye vision field cut (Tr. 279). In late November 2006, she was found to have limited depth perception and field vision, but again these findings were related solely to her right eye vision field cut. Tr. 302, 306.

The above evidence further fails to reveal any significant progressive loss of vision over time that would warrant more restrictive visual limitations being included in plaintiff's residual functional capacity assessment or in the hypothetical question posed to the vocational expert. Nor does the undersigned find the ALJ was required to contact any of plaintiff's treating physicians or other medical sources. An ALJ's duty to further develop the medical evidence in the record is triggered when it "is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Here, though, as discussed above, the substantial weight of the medical evidence in the record supports the ALJ's finding that plaintiff suffered significant work-related vision loss only in her right eye. Accordingly, the ALJ was not obligated to seek further evidence of any potential vision loss in her left eye.

REPORT AND RECOMMENDATION
Page - 4

II. <u>The ALJ Properly Evaluated and Developed the Medical Evidence in the Record</u>

Plaintiff argues the ALJ improperly discounted the medical opinions of the treating and examining opthamologists in the record regarding her visual field restrictions, and those of certain other treating and examining physicians concerning her cardiac and vascular condition. Other than the arguments plaintiff already has presented above, she does not state which opthamologist medical opinions the ALJ failed to consider or in what manner she claims he so erred. For the this reason, and for the same reasons set forth above, the undersigned thus declines to find any such error here.

As to the medical opinions concerning her cardiac and vascular condition, plaintiff alleges the ALJ specifically failed to properly consider the opinions of Robert Woochul Rho, M.D., Raed N. Fahmy, M.D., and Pravin Khemani, M.D. With respect to Dr. Rho, plaintiff states he concluded her atrial fibrillation was highly symptomatic. It is true that Dr. Rho diagnosed plaintiff with paroxysmal atrial fibrillation in mid-May 2007, commenting further that it was "highly symptomatic." Tr. 421. Dr. Rho, however, did not state what he meant by this, or explain exactly what symptoms plaintiff had. Nor did Dr. Rho relate any specific work-related limitations to any such symptoms he may have felt she had. Indeed, plaintiff reported that her episodes of atrial fibrillation occurred only "approximately three to four times per week," and that although "at times" they lasted all day, "more often" they lasted "just for several minutes." Tr. 420.

Plaintiff argues the ALJ incorrectly believed Dr. Rho's mid-May 2007 examination was conducted after the hearing, which, as noted above, was held on June 20, 2007. As such, plaintiff asserts the ALJ did not properly discount the information contained in Dr. Rho's report regarding the severity and frequency of her atrial fibrillation episodes. The ALJ did state as follows:

> . . . [T]he claimant said that she had heart palpitations daily and this is not what she told her cardiologist. She told her cardiologist that she had them three to four times a week. As this evaluation with Dr. Rho was after the hearing testimony, I do not believe that her condition has worsened. . . .

Tr. 17. The undersigned thus agrees that this was not a valid reason for finding plaintiff's heart condition had not worsened. The undersigned disagrees, though, that the medical evidence in the record establishes that her condition had worsened or that, if it did in any way, it worsened to the extent indicating plaintiff's limitations were more significant than found by the ALJ.

Plaintiff asserts it is probable that her condition was worsening at the time, because an early June

REPORT AND RECOMMENDATION
Page - 5

2007 electrodiagnostic study of her chest indicated the presence of atrial fibrillation, with an "estimated EF" of "between 40-45%" and "global LV hypokinesis." Tr. 417-18. Plaintiff, however, fails to show that such findings resulted in any specific work-related limitations. Thus, even if this electrodiagnostic study does indicate a worsening of symptoms – although the undersigned makes no such determination here – it again does not at all indicate that plaintiff is more limited than found by the ALJ.

Plaintiff argues that she was scheduled to undergo pulmonary vein ablation, because medication and direct current cardioversion did not prevent the frequency and severity of her atrial fibrillation. Once more, though, plaintiff fails to appreciate that such evidence merely indicates that plaintiff was scheduled to undergo a medical procedure, not that she had work-related limitations. The same is true in regard to possible ineffectiveness of certain treatment methods. That is, the mere fact that some kinds of treatment are not effective, or that a medical condition persists, does not alone constitute evidence that the condition impacts an individual's ability to work. As such, although the ALJ may have incorrectly noted the timing of Dr. Rho's examination in relation to the hearing, this does not form a sufficient basis for the Court to overturn the ALJ's determination of no worsening symptoms.

In addition, plaintiff asserts the ALJ inaccurately portrayed the conversation she had with Dr. Rho in mid-May 2007. As noted above, plaintiff told Dr. Rho at the time that her episodes of atrial fibrillation occurred "approximately three to four times per week," and that while those episodes "at times" lasted "all day," they "more often" lasted "just for several minutes." Tr. 420. In his decision, the ALJ limited plainitff to not working around heights or hazards because she felt "lightheaded, fatigued and dizzy" during "those few minutes" she felt that way. Tr. 17. Plaintiff argues this limitation did not take into account the fatigue she felt both during and following her episodes of atrial fibrillation, the general lack of stamina she had or the risk of another stroke she faced.

The record contains no objective medical evidence, however, documenting the presence of fatigue or lack of stamina, whether due to atrial fibrillation or another medical condition. While plaintiff herself may have reported having such symptoms, as discussed below these are her own self-reports, and thus do not constitute the objective clinical findings of her treatment providers. Also as discussed below, the ALJ did not err in discounting plaintiff's credibility in this case. Although plaintiff asserts her husband and other lay witnesses also testified as to or reported such symptoms, she has not alleged that the ALJ erred in

REPORT AND RECOMMENDATION
Page - 6

1  finding their statements failed to offer "any reason" that she "could not work in some position," or that he
2  otherwise improperly evaluated those statements. Tr. 17. Lastly, as explained elsewhere herein, the mere
3  fact that a stroke may occur in the future does not mean that it will occur, or that the mere risk of a stroke
4  establishes the existence of any current work-related limitations.

Plaintiff states that Dr. Fahmy noted fatigue, lack of energy, difficulty sleeping, shortness of breath upon exertion, headaches and heart palpitations on her part. Most, if not all, of these noted symptoms, however, appear to be in the record because plaintiff herself had reported experiencing them (see Tr. 199, 204, 220, 331), and, as such, do not in themselves constitute objective medical clinical findings. Again, though, as with Dr. Rho, Dr. Fahmy failed to opine as to any specific work-related limitations plaintiff had that could be attributed her atrial fibrillation or the above symptoms. Indeed, plaintiff's own self-reports indicate she remained asymptomatic on a number of occasions. See Tr. 199, 202, 327, 333. As such, plaintiff has failed to point to any medical opinion source evidence from Dr. Fahmy that would warrant more restrictive limitations than those found by the ALJ.

Lastly, plaintiff points out that Dr. Khemani stated she was at high risk for strokes given her atrial fibrillation. Dr. Khemani did state in late June 2006, that plaintiff had "primary risk factors for stroke including paroxysmal atrial fibrillation." Tr. 266. He also was "concerned about a cortical stroke." Id. In early August 2006, Dr. Khemani stated that plaintiff had "primary risk factors including atrial fibrillation," and that as long as she had paroxysmal atrial fibrillation, "she would remain at a high risk for strokes." Tr. 263. The undersigned agrees with defendant, however, that merely stating a claimant may be at risk for a particular medical complication does not mean that it will happen, and thus it remains purely speculative as to whether such a risk will result in future work-related symptoms. More importantly, however, plaintiff once again fails to point to anything in Dr. Khemani's treatment records or progress notes that indicate he felt she suffered from any current specific work-related limitations.

Plaintiff goes on to argue that if the ALJ felt he needed to obtain greater clarification from any of the above physicians, he had a duty to contact them. But as the above discussion make clear, the record is unambiguous regarding the nature of the evidence provided by these medical sources, none of which has given any indication plaintiff is disabled, or, indeed, has any significant work-related limitations. As such, the undersigned declines to find the medical evidence in the record is insufficient or ambiguous enough to trigger the ALJ's duty to further develop the record. Accordingly, the undersigned does find the ALJ did

1 | not err in failing to do so here.

2 | III.    The ALJ Did Not Err in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. <u>Id.</u> at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

In this case, the ALJ stated that in general plaintiff's testimony was credible, but then found further that while she testified she had heart palpitations daily, this was not what she told Dr. Rho. Tr. 17. Indeed, as noted above and related by the ALJ, plaintiff informed Dr. Rho that she experienced them only three to four times per week. Tr. 17, 420. Also as noted above, prior inconsistent statements concerning symptoms may be considered by the ALJ in determining a claimant's credibility. <u>Smolen</u>, 80 F.3d at 1284. The ALJ also did not err overall, as discussed above, in finding that plaintiff's heart condition had not worsened since her mid-May 2007 examination by Dr. Rho, another reason the ALJ provided for finding not entirely

1  credible plaintiff's allegations of inability to perform any work. See Tr. 17.

2  The ALJ also noted that while plaintiff testified that she "had a weak grip on her right hand," the problem with her hand had "been present since before her alleged onset [date of disability] and she was able to do truck driving." Id. The ALJ further noted that despite being told not to drive, she continued to do so, and that she cared "for her elderly father" as well. Id. These too are valid reasons for discounting plaintiff's credibility concerning her claim that she is totally disabled. See Smolen, 80 F.3d at 1284 n.7 (to determine whether claimant's symptom testimony is credible, ALJ may consider activities of daily living, and such testimony may be rejected if claimant is able to spend substantial part of day performing activities transferable to work setting).

Plaintiff argues the ALJ failed to provide clear and convincing reasons for not finding her entirely credible concerning her claimed inability to work. However, she does not expressly challenge any of the above specific reasons the ALJ provided in that regard. Rather, plaintiff merely reiterates her assertions that the ALJ improperly evaluated the medical evidence in the record. As discussed above, though, there was no error committed on the part of the ALJ with respect to his evaluation of that evidence. While it is true, as plaintiff points out, that the ALJ found her in general to be credible, also as discussed above, the ALJ then went on to list specific reasons why she was not credible to the extent she was alleging that she was incapable of performing all work. In addition, those reasons are both clear and convincing. As such, the undersigned finds the ALJ did not err here.

IV.  The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only

those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ determined plaintiff to be capable of performing light work, with certain other non-exertional limitations, finding specifically as follows:

> . . . the claimant has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. She could never climb ladders, ropes, or scaffolds. She has limitations in depth perception and field of vision. She needs to avoid concentrated exposure to hazards.

Tr. 16. Plaintiff argues the ALJ failed to perform a function by function analysis as is required by SSR 96-8p, and did not consider all of the relevant evidence in the record in making the above residual functional capacity assessment. The undersigned disagrees.

The residual functional capacity assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184 *3. Although plaintiff asserts the ALJ erred in failing to perform this type of assessment, she sets forth no specific examples or evidence concerning any such failure. Rather, the undersigned finds that the ALJ did conduct a proper analysis of all of the relevant evidence in the record, medical and otherwise, and based on that analysis, did not err in assessing the residual functional capacity that he did. Indeed, plaintiff does not state what relevant evidence the ALJ failed to consider, except once again to refer to her claims that he failed to understand the true nature and extent of her vision and heart impairments. As discussed above, though, the ALJ committed no error in that regard.

Plaintiff next argues the ALJ failed to discuss her ability to performed sustained work activities in an ordinary work setting on a regular and continuing basis also as required by SSR 96-8p. A claimant's residual functional capacity ordinarily is the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 *2 (emphasis in original). In addition, the residual functional capacity assessment itself "must include a discussion of the individual's abilities on that basis." Id. (emphasis added).

The Fifth Circuit has found that an ALJ need not make a specific finding in every instance as to a

REPORT AND RECOMMENDATION
Page - 10

claimant's ability to sustain employment, but rather such a finding may be subsumed within the residual functional capacity assessment itself. See Frank v. Barnhart, 326 F.3d 618, 621 (5th Cir. 2003) (because nothing in record suggested claimant was unable to work on sustained basis, ALJ was not required to make express determination as to whether work could be maintained on such basis); Perez v. Barnhart, 415 F.3d 457, 466 (5th Cir. 2005) (claimant failed to offer any evidence his condition waxed and waned in intensity such that his ability to maintain work was not adequately taken into account in residual functional capacity determination).

The undersigned adopts the Fifth Circuit's reasoning, and agrees with that circuit's rejection of the argument that "separate findings must be made "on 'obtaining' and 'maintaining' a job in every case, even cases in which the applicant does not suggest that there is any difference between the issue of his ability to work and his ability to sustain work." Id. In this case too the substantial evidence in the record fails to give any indication that plaintiff cannot perform sustained work activities on a regular and continuing basis. No medical opinion source has found otherwise, and plaintiff points to no other objective medical evidence to establish a contrary finding. Lastly, plaintiff argues the ALJ did not identify all of the limitations which she asserts are supported by the record. But plaintiff does not point to what she believes those limitations to be, nor does the undersigned find any. As such, the ALJ did not err here as well.

V.  The ALJ Did Not Pose a Defective Hypothetical Question

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported

by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ asked the vocational expert to consider the residual functional capacity with which plaintiff was assessed, except that, as noted above, instead of stating that plaintiff had "limitations in depth perception and field of vision," the ALJ stated that plaintiff's right eye had "diminished vision," but the left eye was "good". Tr. 16, 42. Also as noted above, the vocational expert testified that there were two other jobs plaintiff could perform, the job of information clerk and that of office helper. Tr. 42-43, 45-46. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 18-19.

Plaintiff argues the ALJ failed to present all of her non-exertional limitations that were supported in the record to the vocational expert. It appears, however, that the non-exertional limitations plaintiff refers to here are the same ones she argues above the ALJ failed to properly consider – namely, atrial fibrillation and accompanying related symptoms and bilateral vison field restriction. As discussed above, though, the ALJ did not err in considering or evaluating that evidence, nor does the record establish any further specific work-related limitations stemming therefrom. Plaintiff also points to her own testimony concerning her alleged need to sit down or rest after undergoing short periods of exertion, which need, she claims, would be even greater if she also experienced dizziness/lightheadedness. But, once more, the objective medical evidence in the record does not support these claims, and, as discussed above, the ALJ properly discounted her testimony that she was unable to perform any type of work.

Lastly, plaintiff argues that given her vision impairment, she is precluded from performing the two jobs identified by the vocational expert in light of the descriptions of those jobs contained in the Dictionary of Occupational Titles ("DOT"). Specifically, plaintiff asserts the information clerk job requires the ability to: see the details of objects, both at close range and at a distance; quickly and accurately compare letters, numbers, objects, pictures or patterns; make fast, simple and repeated movements of her wrists, fingers and hands; and work with the public. Nothing in the record, however, indicates plaintiff has any problems in her ability to deal with the public or in using her wrists, fingers or hands. Indeed, as discussed above, the ALJ properly discounted plaintiff's claims regarding her alleged

hand impairment.

With respect to the ability to see objects – and to the extent the ability to make quick and accurate comparisons is related to the ability to see as well – the DOT's description of the job of information clerk only requires the ability to exercise near acuity frequently, or one third to two thirds of the time. See DOT 237.367-018, 1991 WL 672187. All other vision-related abilities, including depth perception and field of vision, are noted as being not present or not existing for that job. In terms of near acuity, furthermore, the objective medical evidence concerning plaintiff's vision impairment gives no indication that it causes any limitations in her near acuity abilities. In addition, the vocational expert specifically testified that the ability to use only one eye – i.e., the right eye in plaintiff's case – would not impact her ability to perform the job of information clerk or, indeed, the job of office helper. Tr. 45-46.

Given that the only vison-related ability the DOT's description of the information clerk job requires concerns near acuity, and the vocational expert gave no testimony that the ability to use only one eye at all would interfere with near acuity in performing that job or that plaintiff could do that job despite an inability in that vision-related area, the undersigned disagrees with plaintiff that the vocational expert's testimony at all conflicts with the job description contained in the DOT.[3] With respect to the office helper job, plaintiff states that job requires the ability to: have good vision to read written items; exert oneself over long periods of time without being winded or out of breath; see objects at close range and at a distance; and see objects or the movement of objects to one side when the eyes are focused.

The vision requirements for the job of office helper are the same as those required for the job of information clerk, at least according to the DOT. See DOT 239.567-010, 1991 WL 672232. As such, for the same reasons the undersigned found plaintiff's vision impairment did not prevent her from performing the job of information clerk and the vocational expert's testimony was not inconsistent with the description thereof contained in the DOT, so too does the undersigned also so find in regard to the office clerk job. In addition, again, as discussed above, to the extent the office clerk job requires the ability to exert oneself over time without becoming winded or out of breath, the medical evidence in the record fails to document

---

[3] The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, furthermore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT, and explain how the discrepancy or conflict was resolved. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1 and *4.

REPORT AND RECOMMENDATION
Page - 13

any objective clinical findings indicating plaintiff has had fatigue such that it limits her to performing less than light work as found by the ALJ or as required by that job. Accordingly, the ALJ did not err in finding plaintiff capable of performing it and thus to be not disabled.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 12, 2008**, as noted in the caption.

DATED this 14th day of November, 2008.

Karen L. Strombom
United States Magistrate Judge